No. 87-241

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JERRY WATERS,

        Defendant and Appellant.

_____

APPEAL FROM:  The District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Thompson & Swenson; Bruce E. Swenson, Havre, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Joe R. Roberts, Asst. Atty. General, Helena
        David G. Rice, County Attorney, Havre, Montana

_____

Submitted on Briefs:  Aug. 20, 1987

Decided:  October 6, 1987

Filed:  OCT 6 - 1987

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Following a trial by jury in the Twelfth Judicial District, Hill County, the defendant, Jerry Waters, was convicted of attempted theft, a felony. Waters alleges that he was denied his constitutional right to a speedy trial and that the District Court erred by admitting a video cassette recorder (VCR) into evidence. We disagree. The judgment of the District Court is affirmed.

Waters presents the following issues for our review:

1. Whether the District Court erred by failing to grant defendant's motion to dismiss for denial of speedy trial?

2. Whether a VCR which was not included in a list of tangible objects as required by § 46-15-322(1)(d), MCA, should have been excluded from evidence admitted at the trial?

On August 8, 1985, Waters was arrested by City of Havre police officers and incarcerated in the Hill County jail for a period of 13 days. Waters' arrest resulted from his attempt to trade a VCR he had rented from Marra's TV for a VCR owned by Hi-Line Electronics. The intervention of the City of Havre Police, at the request of Hi-Line Electronics, prevented completion of the transaction.

The Hill County Attorney's office filed an information charging Waters with attempted theft, a felony, on August 29, 1985. Arraignment was initially scheduled for September 20, 1985, but was delayed until October 2, 1985, at the request of Waters. Counsel for the defendant raised the issue of denial of speedy trial at the omnibus hearing held January 29, 1986.

Waters filed a motion to dismiss for denial of speedy trial on April 16, 1985, and an evidentiary hearing was held on May 8, 1985. At the hearing, Gayla Hunt of Adult Probation and Parole, testified that Waters was under her supervision as a result of a previous deferred sentence. Ms. Hunt indicated that the decision as to whether to seek revocation of Waters' probation would be made following the outcome of his trial on the attempted theft charge. She also testified that during the period from his release from jail on August 21, 1985, until the date of the hearing, Waters failed to report at 11 of 18 scheduled appointments.

Counsel for the defendant also called Waters to the stand. Waters testified as follows:

Q. [defense counsel] Have the pending charges affected how much work you have been able to do?
A. Yes and no.

Q. Could you explain that a little more, please?
A. Well, I don't know how to put it. It just bothers and worries me that I really don't have, get to thinking about it and wouldn't have any ambition to go out and do anything, really. And like more or less go to check out, go to the secondhand store, flea markets on the weekend.

Waters also indicated that the pending charges prevented filing a lawsuit against Marra TV; that he was blacklisted by rental stores and not able to do normal rental business; and that he was anxious for the pending charge to be resolved.

The District Court denied the defendant's motion to dismiss and proceeded to trial on May 12, 1986. During the time from the filing of the information until May 9, 1986, the prosecution told the defendant and defendant's counsel that two photographs of the VCR would be admitted into evidence. The VCR had not been listed as a proposed exhibit or as an item the prosecution would seek to present at trial.

The VCR was admitted into evidence during trial over defendant's objection.

Any person accused of a crime is guaranteed the right to a speedy trial by the Sixth Amendment to the United States Constitution and Art. II, § 24 of the Montana Constitution. The right to a speedy trial is fundamental. It attaches when a defendant is accused of a crime, State v. Ackley (1982), 201 Mont. 252, 255, 653 P.2d 851, 853, but the nature of the right precludes establishing a time period cast in stone as determinative.

> The right of a speedy trial is necessarily relative. It is consistent with delays and depends on circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

Beavers v. Haubert (1905), 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950, 954. Thus, any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case.

Consistent with the amorphous quality of the right, the United States Supreme Court established a four-pronged balancing test to determine speedy trial claims in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. This Court has adopted the Barker test as stated in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-4:

> These cases involve a sensitive balancing of four factors, in which the conduct of the prosecution and defendant are weighed in determining whether there has been a denial of the right to a speedy trial. The four factors to be evaluated and balanced are:
>
> 1) Length of delay;
>
> 2) Reason for delay;

3) Assertion of the right by defendant; and

4) Prejudice.

No single factor is determinative. Each facet of the analysis is weighed in light of the surrounding facts and circumstances.

The length of delay acts as the triggering mechanism in a speedy trial analysis. The other factors need not be examined unless a presumptively prejudicial delay has occurred. State v. Harvey (1979), 184 Mont. 423, 603 P.2d 661. The delay in the instant case is 277 days. This amount of time is sufficient to trigger a speedy trial examination. State v. Palmer (Mont. 1986), 723 P.2d 956, 43 St.Rep. 1503 (256 days); State v. Chavez (Mont. 1984), 691 P.2d 1365, 41 St.Rep. 2219 (214 days); State v. Ackley (1982), 201 Mont. 252, 653 P.2d 851 (257 days); State v. Cassidy (1978), 176 Mont. 385, 578 P.2d 735 (246 days).

The delay in the instant case gives rise to a rebuttable presumption of prejudice. In order to rebut the presumption, the State must come forward with evidence showing that the defendant was not prejudiced by the delay and that there is a reasonable excuse. Ackley, 201 Mont. at 256, 653 P.2d at 853.

The second Barker factor is the reason for the delay. Waters is responsible for 12 of the 277 days. Thus the remaining 265 days are attributable to the State.

The right to a speedy trial is designed to prevent oppressive tactics by the State. Waters does not contend, nor does the evidence support, a finding that the State engaged in bad faith or oppressive tactics. We are not unaware of the crowded court dockets and the method of scheduling trials. Although delays inherent in the system are chargeable to the State, institutional delay will be

weighed less heavily in the balancing process. Ackley, 201 Mont. at 256, 653 P.2d at 853. In the instant case, we find the delay to be institutional.

The third Barker factor is assertion of the right by the defendant. Waters properly asserted his right before commencement of trial. State v. Bailey (1982), 201 Mont. 473, 655 P.2d 494. The State does not contest this factor.

The final factor under Barker is prejudice to the defendant. Prejudice is determined by examining the defendant's interest in a speedy trial. These interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and, (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. Waters concedes that 13 days incarceration is not per se sufficient to establish prejudice violative of the right to a speedy trial. Nor does the record indicate that his defense was in any way impaired.

The point of contention is whether Waters suffered anxiety and concern sufficient to violate the right to speedy trial. A certain amount of anxiety and concern is inherent in being accused of a crime. Chavez, 691 P.2d at 1371, 41 St.Rep. at 2224. A defendant's anxiety and concern is not dispositive. It is but a factor to be considered in determining prejudice. The crucial factor in a prejudice determination is whether the defense has been impaired. See Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. As noted above, there was no evidence that Waters' defense was in any way impaired.

In any event, Waters' allegations of anxiety and concern cannot be deemed excessive. Nor do the allegations conform to the evidence. When questioned as to whether his anxiety had affected his ability to work, Waters himself was unsure.

He responded "yes and no." Waters' claim to a generalized lack of ambition is not sufficient to demonstrate prejudice.

Waters also claims that his anxiety and concern were magnified by the possible revocation of probation. His failure to report at 11 of 18 scheduled meetings with his probation officer does not support his contention. We do not find his argument convincing.

The third allegation of anxiety resulted from Waters' inability to pursue a civil suit against Marra TV. It was not the passage of time but the result of the charges which ultimately affected defendant's civil remedy, if he had any.

Finally, Waters claims to have suffered anxiety and concern due to his alleged "blacklisting" from other rental businesses. Again, we find Waters' argument less than compelling. In response to the question of whether this blacklisting resulted in depression, Waters stated he just wanted to sue Marra's TV. Neither the delay in pursuing a civil suit nor the inability to rent a VCR is sufficient to demonstrate prejudice sufficient to violate the right to a speedy trial. Whether analyzed individually or cumulatively, the defendant's allegations of excessive anxiety and concern are inadequate.

The trial judge saw and heard Waters during cross-examination by Deputy County Attorney Rice. Due regard must be given to the opportunity of the trial court to judge the credibility of the witness. We must defer to District Court findings if they are supported by credible evidence. Chavez, 691 P.2d at 1371, 41 St.Rep. at 2224. Here, the State effectively demonstrated an absence of prejudice. We hold that Waters was not denied the right to a speedy trial.

Waters' contention that the District Court erred when it admitted the VCR into evidence is equally without merit. The purpose of Montana's discovery scheme is to enhance the

search for truth. See generally Florida v. Williams (1970), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446. This goal is accomplished by granting "full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." State v. Dodds (Ariz. 1975), 537 P.2d 970, 972.

Consistent with the goal, § 46-15-329, MCA, provides a means of enforcing discovery orders. It endows the district courts with the flexibility to impose sanctions commensurate with the failure to comply with discovery orders. The statute does not mandate automatic exclusion for noncompliance. By its terms, § 46-15-329 provides that "the court may impose any sanction that it finds just under the circumstances . . .."

Imposition of sanctions is a matter best left to the sound discretion of the district court. Such discretion allows the court to consider the reason why disclosure was not made, whether the noncompliance was willful, the amount of prejudice to the opposing party, and any other relevant circumstances. Absent a clear abuse of discretion, the decision of the District Court must be upheld.

In the instant case, the District Court found that Waters had not suffered prejudice by the State's failure to list the VCR. We agree. It is clear that Waters knew about the VCR since it was the item in controversy. The State had notified him that photographs of the VCR would be introduced into evidence and later informed the defense that the VCR itself would be introduced. Waters was not prejudiced or unduly surprised by the introduction of the VCR.

We hold that the District Court did not abuse its discretion. The judgment is affirmed.

_John C. Sheehy_
Justice

- 8 -

We Concur:

_____

_____

_____

_____
                Justices